MORGAN vs. BICKLE & AL.

APPEAL from the court of the first district.

MARTIN, J. delivered the opinion of the court. The plaintiff charges that he sold and delivered to the defendants 1,460,000 bricks for $15,803, that they paid him $14,325 50, and still owe him $1477 50. The general issue was pleaded—there was a verdict and judgement for the defendants, and the plaintiff appealed.

Bennett deposed he occasionally made entries of the bricks sold at the plaintiff's yard;

*Parol evidence may be received where part of the written was lost or destroyed.*

*The jury are proper judges of the credibility of witnesses; and a party, who did not apply for a new trial below, will not be allowed one above, on the ground that the verdict is not according to the testimony.*

when *bons* were given for bricks sold, they were almost invariably brought to the plaintiff; when none was given, an entry was made in the margin, stating this circumstance. The witness knows the defendants frequently called and settled their acounts for bricks, and took up their *bons*. The *bons* were kept in an open drawer, in the counting-house of Morgan, Dorsey & co. of which firm the plaintiff was a partner He does not recollect at what time Eves took possession of the plaintiff's yard, as his agent. After that period the *bons* were delivered him from the counting house, without being counted.

In his cross examination, the witness being shewn a book in which an account of the sales of bricks is kept ; said it is written by him, but the figures are those of plaintiff. It was the custom of the yard to require *bons* for all the bricks delivered, and of the defendants to give them for all the bricks they bought, and he believes they did for all. The *bons* were settled weekly, while Mathews was agent, and once a week or a fortnight, while Casey was It was the defendants custom to take up their *bons* when a payment was made, but sometimes they gave a note, and a receipt was

given. He recollects having received $1000 from Price, in 1818 or 1819, when no *bons* were given up.

The principal examination being resumed, the witness said he recollected the defendants paying the plaintiff several sums, for which no *bon* was given up. He does not know they received any bricks without giving a *bon* at the time of delivery. Sometimes the plaintiff, or one of the house, gave an order for bricks; in which case, there was no *bon* required.

Casey deposed he was the plaintiff's agent in the brick-yard, from 1818 to 1821. He recognised the book shewn to the preceding witness, as that in which the bricks delivered were entered. It was written by Phelan, under the witness's direction, and is correct in all its entries. The entry in September 1820, of 171,500 bricks is correct, and the defendants gave *bons* for these. The entries in October, of 185,000 and 208,000; those of December, of 62,500 and 115,500; and that in January 1821, of 136,000; are also correct: and the defen. ants gave *bons* for these quantities. The *bons* were counted by the witness. He occasionally carried the book to Morgan,

Dorsey & co., and the amount was settled and made up from the *bons*. Bricks sold during that period for 18, 16, and 9 dollars a 1000. He never delivered any bricks to the defendants, except those set down in the book.

Phelan deposed he made the entries in the book kept by Casey, under the direction of the latter. He never made any entry, without previously counting the *bons*—and all the entries in the book are correct.

Bennet being recalled, said—In the drawer in which the *bons* were kept, there was a number of them which had been settled for, and not given up. The defendants sometimes settled without taking up their *bons*.

Phelan being called up, by the defendants, said he was called upon by Eves, to verify the hand-writing in the book, in consequence of a dispute with the defendants about a quantity of bricks, which they refused to settle for, without getting their *bons*. The witness was present at a conversation between Eves and the defendant Hamblet, respecting a deficiency of bricks : the latter insisted on the *bons* being given up; stating that as they were without a date, they might come against them. The former said the *bons* were lost or mislaid, and

if their production was insisted on, he could not easily find enough to cover the bricks in dispute. By these the witness thinks were meant *bons* that were not given up. The witness is certain that *bons* for the whole quantity of bricks charged by him, under Casey's directions, were in existence at one period, for he counted them himself, before he made the charges.

Eves deposed he had the charge of the plaintiff's brick-yard in 1820. In making the defendants' account, he found *bons* wanting for 98,500 bricks, he informed them of this, and desired a settlement. They refused to settle, unless the *bons* were produced. On one occasion he had a conversation with one of the defendants, as stated by Phelan. The whole of the *bons* charged by Casey on his books, passed through the witness's hands, and he never made an entry from Casey's book into the plaintiff's, without counting the *bons*. He is certain that the account annexed to the petition is correct, and the sum charged due by the plaintiff to the defendants.

Casey, called by the defendants, deposed he entered the plaintiff's yard in 1820, and left it in the month of April 1821. He was

to be rewarded by a share of the profits. He referred to an account, not on file, by which he regulated his own with the plaintiff's, with the exception of 80,000 bricks, and some other articles ; for which the latter afterwards gave him credit. The prices of bricks mentioned, are those at which the witness settled his own account with plaintiff.

Phelan being asked whether by a reference to the book stated in his deposition, and in his hand-writing, he can say whether the 172,500 bricks charged to the defendants, were delivered in August or September 1820, answered he cannot, as the *bons* were not dated.

Fox deposed he was a contractor for Beale's house, the bricks were furnished by the plaintiff on the defendants *bons*, and were delivered to him. In settling the account with Eves, they had a dispute about the quantity delivered. Beale delivered to the witness the defendants *bons* for 100,000 bricks, which the witness delivered to the defendants. He settled with Beale for the *bons* he had in his hands.

Beale deposed that the bricks of his house were purchased from plaintiff, a part of them with the defendants *bons*. In settling with

Eves, the witness received a quantity of the defendants *bons* and paid for them, and charged Fox with the amount so paid.

East'n District.
*April*, 1824.

MORGAN
*vs.*
BICKLE & AL.

Fox, recalled, said that on giving up these *bons* to the defendants, he did not receive any thing from them, as they were given for his accommodation.

Price deposed that the receipt, produced by the defendants, is on his, the witness's hand-writing.

Casey, recalled, said the printed *bons* of the defendants, for the bricks of Beale's house, were included in the charge made against them in the book kept by the witness, and were entered indiscriminately with the manuscript ones, and were returned, tied up together, to Eves.

On his cross-examination by the plaintiff, he said he did not know whether Beale settled for the printed *bons*. He does not know how many bricks were delivered on the contract for 100,000 bricks with Beale. The witness has been paid for 780,000 bricks, but not at the rate as charged the defendants. As appears by the book, only 878,000 out of the 1,000,000 were delivered to the defendants. The witness recollects that Price and one of the de-

East'n District.
*April*, 1824.

MORGAN
*vs.*
BICKLE & AL.

fendants came to the yard, and took a quantity of printed and manuscript *bons* of the defendants. He does not know for what purpose they came, but recollects the defendants said there was an error in *bons* charged to them, which ought to have been charged to Beale, to the amount of 580,000.

The documents produced, are :

The defendants receipt for 1,361,700 bricks, up to Dec. 21st 1821.

Another for 100,000, for the account of Beale and Duncan, August 1820. This is the receipt proven by Price.

Fox, recalled, said he settled an account with Beale, for the bricks furnished by the plaintiff.

Beale deposed he settled with Fox, according to the accounts filed. He does not recollect how many bricks were delivered for the house, before his father's death. After that event, the defendants called on him and Duncan for a settlement ; and they being unable to pay, the building was discontinued. He cannot say whether the defendants had then a sufficient quantity of bricks hauled up, to finish the house. It was finished by Mitchell & Lemoine. He does not know whether the

defendants hauled any bricks for the house, after they ceased working on it.

Price, being shewn the receipt for 100,000 proved by himself, said it was given under the following circumstances : the defendants printed *bons* being out, and they being unwilling to be at the expense of printing others, he delivered them *bons* for 100,000 bricks, and took their receipt ; which he left in the plaintiff's hands.   He recollects the defendants paying him $1000 for bricks, the *bons* for which were not given up.

Eves, re-examined, deposed a settlement took place on the 18th or 19th of August, 1820.

Being asked how he knows this, and whether he was present, he said he recollects the settlement, but not the day.

Being asked how he knows the account sued on is correct, he said he received and credited the *bons*, with the exception of the 98,000 which were mislaid.   He believes he received these last *bons* from Casey ; but he cannot account for them, as they are lost or mislaid : another reason for this belief, results from an examination of the plaintiff's books.   These were once kept by the witness, but he made

VOL. II. (N. S.)      49

East'n District. occasional entries in them. He knows the
April, 1824. sums credited on that account are correct;
MORGAN because' as the plaintiff's agent, he regulated
vs. and settled them with the defendants.
BICKLE & AL.

Mathews, one of the jury, called by the defendants, deposed it appears to him that Eves has acted in this cause, as the plaintiff's agent; he has noticed him, during the trial, asking questions to the witnesses.

Eves said he is the plaintiff's agent, and has a general power for transacting his business. He receives a fixed salary, and no share of the profits. He has no interest in the present cause.

Four documents were now introduced, viz:

A memorandum of *bons,* applicable to Casey's account, corrected January 14th 1822, deficiency 98,500 bricks.

The defendants receipts for 137,600 bricks.

Their receipt for 370 *bons* for 185,000 bricks, being the *bons* returned to Eves by Casey, Oct 31st 1820—for which the present receipt is to stand good on the *bons.*

Eves' receipt for the defendants note for $866 33, in full, except for *bons* for 98,500 bricks, for which a settlement is yet to be made, the same being in dispute.

Two bills of exceptions were taken.

The plaintiff's counsel asked Casey, one of the witnesses, whether the entry in his book, of 879,500 bricks sold the defendants, was not correct; and whether the bricks were not delivered accordingly—the witness having stated on oath, that no bricks had ever been delivered them without a *bon* signed by them—and that the *bons* had been delivered to the plaintiff as his agent, and it appearing by the entries themselves, that *bons* had been given for all the bricks received, in the account sued upon. The defendants counsel objected to this question, on the ground that the defendants having given written evidence of the bricks received, parol evidence and the plaintiff's books were not admissible against the defendants.

. The court held that the plaintiff's books were not evidence for him, but the witness might look into them, to refresh his memory. The question was allowed to be answered, and the defendants counsel took a bill of exceptions.

The like exception was taken to Casey's testimony.

East'n District.
*April*, 1824.

MORGAN
vs.
BICKLE & AL.

MORGAN
*vs.*
BICKLE & AL.

It does not appear to us that the court erred, in admitting the parol evidence in either of the cases in which bills of exceptions were taken: because it was shewn that some of the *bons,* as written evidence of the delivery of the bricks, were lost or mislaid.

The verdict shews that the jury did not give full credit to the testimony offered by the plaintiff, most, if not all of whose witnesses are persons intimately connected with him. Of the degree of credit due to this testimony, the jury were proper judges ; the plaintiff did not see fit to apply for a new trial below, and the judgment expressly states the satisfaction of the court with the verdict. We do not think that we ought to interfere.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be affirmed, with costs.

*Hennen* for the plaintiff, *Morse* for the defendants.